UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WAYNE HISER,

    Plaintiff,    Case No. 2:17-cv-36

v.    Honorable Gordon J. Quist

SCOTT STRAIT, et al.,

    Defendants.
_____/

# **OPINION**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Strait, Wilk, Ahlborn, Spencer, and Correct Care Solutions. The Court will serve the complaint against Defendant Aldridge.

**Discussion**

I.  Factual allegations

Plaintiff, David Wayne Hiser, filed this civil rights action pursuant to 42 U.S.C. § 1983 while he was confined at the Mackinac County Jail. Plaintiff sues Defendants Mackinac County Sheriff Scott Strait, Under Sheriff Ed Wilk, Jail Administrator Tim Ahlborn, Prosecutor J. Stewart Spencer, County Jail Doctor Scott Aldridge, and Correct Care Solutions. Plaintiff alleges that he was denied adequate medical treatment during his time at the Jail in violation of his Eighth Amendment rights.

Plaintiff alleges that he had a tree fall on him in October of 1992, which broke Plaintiff's back. Plaintiff eventually recovered enough to return to work. However, in the year 2000, Plaintiff began to experience daily back pain. Plaintiff was treated with pain medication until 2008, when he began to receive epidural injections.

Plaintiff arrived at the Mackinac County Jail on August 23, 2016, and told jail personnel that he was legally disabled and would need to see a doctor. At the time that Plaintiff came into the jail, he could walk approximately 9 miles, but required continuing treatment to maintain his health. After three to four weeks, a nurse told Plaintiff to file some grievances and that if the doctor didn't see them, someone in the front office would see them and something would be done for Plaintiff. After 56 days, Plaintiff was finally seen by the jail doctor, Defendant Scott Aldridge. At this time, Plaintiff explained his disability and asked for medical help. Plaintiff told Defendant Aldridge that he had 24 years worth of medical records that he could get within 20 minutes. Defendant Aldridge stated that he would get Plaintiff's records from the Veteran's Administration.

Another 64 days elapsed, at which point Plaintiff wrote 2 more grievances. Upon seeing Plaintiff, Defendant Aldridge asked why he had filed "all the grievances." Plaintiff stated that something needed to be done and asked Defendant Aldridge to read his records. Plaintiff was given nothing but 6 Tylenol per week for pain. Plaintiff complains that he lost a tooth and that two more teeth are loose because the pain caused him to grind his teeth so much. Plaintiff's ex-wife and friends called state and county officials, and one of the county commissioners investigated. Plaintiff states that Defendant Strait spoke to the commissioner and told him that Plaintiff was angry and was merely seeking narcotics. Plaintiff denies ever asking for narcotics.

Plaintiff states that he did not receive any treatment for his back problems for approximately 5 months. In addition, Plaintiff was forced to sleep on a steel bunk with a single mattress, despite his request for a second mattress. At the end of the 5 month period, Plaintiff could not walk a quarter of a mile. Plaintiff claims that his back pain has never felt as severe as it is now, and he is not sure if he will ever recover from the extended period of medical neglect. Plaintiff states that he could not eat at the table until the nurse provided him with a wheelchair on December 18, 2016. During the time that Plaintiff was without a wheelchair, there were times that he was in too much pain to make it to the toilet, so he urinated and defecated in his bunk. On at least one occasion, Plaintiff was placed in "the hole" for his incontinence.

On January 29, 2107, Plaintiff asked officers for paperwork to file a lawsuit in the federal court. On January 30, 2017, Plaintiff was taken to the emergency room in St. Ignace and received injections for pain. On January 31, 2017, a doctor read Plaintiff's medical records, did an examination, and said that Plaintiff had back and nerve issues. The doctor also said that if nothing was done, Plaintiff would be in bed for good. On February 1, 2017, Plaintiff received an extra

mattress and was started on 650 mg of Tylenol twice a day. On February 3, 2017, Plaintiff had additional blood work. Plaintiff was released on probation on March 23, 2017.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment by neglecting his medical needs for five and a half months, by confining him in a jail which was not handicapped accessible, and by not providing him with a wheelchair when he initially began his period of confinement. Plaintiff seeks damages in the amount of $4,000,000.00.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his Eighth Amendment rights when they failed to properly address his medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based

on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff claims that he spoke with Defendant Aldridge on multiple occasions, but that Defendant Aldridge denied all forms of treatment and did not even read Plaintiff's medical records for a period of five months. The Court concludes that Plaintiff's claim against Defendant Aldridge is not clearly frivolous and may not be dismissed on initial review.

With regard to Defendant Strait, Plaintiff alleges that he spoke to one of the county commissioners and told him that Plaintiff was merely seeking narcotics. However, Plaintiff does

not allege that Defendant Strait took any action to prevent him from actually receiving necessary medical care. Because Plaintiff does not allege facts which show that Defendant Strait acted with deliberate indifference, Defendant Strait is properly dismissed.

Plaintiff fails to make specific factual allegations against Defendants Wilk, Ahlborn, and Spencer, other than his claim that they failed to conduct an investigation in response to his grievances. In fact, Plaintiff fails to mention these Defendants by name anywhere in the body of his complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Wilk, Ahlborn, and Spencer engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Finally, Plaintiff's claim against Correct Care Solutions fails because the corporation cannot be liable for the individual Defendant's actions based upon a theory of respondeat superior or vicarious liability. It is well established that a plaintiff bringing an action pursuant to § 1983

cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that the liability of a corporation providing care for prisons within the Michigan Department of Corrections "must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's lack of medical treatment was based upon cost concerns. Thus, because Correct Care Solutions is not liable under a theory of respondeat superior for the individual Defendants' alleged deliberate indifference to Plaintiff's medical needs, the Court will dismiss Defendant Correct Care Solutions.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Strait, Wilk, Ahlborn, Spencer, and Correct Care Solutions will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Aldridge.

An Order consistent with this Opinion will be entered.


Dated: May 16, 2017                     /s/ Gordon J. Quist
                                      GORDON J. QUIST
                                  UNITED STATES DISTRICT JUDGE