UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WAYNE HISER,

        Plaintiff,

v.                                              Case No.  2:17-cv-00036

                                              Hon. Gordon J. Quist

SCOTT ALDRIDGE, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a 42 U.S.C. § 1983 civil rights action brought by David Wayne Hiser for a violation of his Eighth Amendment rights during his confinement in the Mackinac County Jail. Plaintiff alleges that Defendant Dr. Scott Aldridge failed to properly treat him and provide him with pain medication.  Defendant Aldridge filed a motion for summary judgment. (ECF No. 24). Plaintiff filed a response. (ECF No. 28).  Defendant filed a reply. (ECF No. 29).  Plaintiff filed a response to Defendant's reply.  (ECF No. 30).

        Plaintiff alleges that he broke his back when a tree fell on him in October of 1992. Plaintiff eventually recovered and was able to return to work. However, in the year 2000, Plaintiff began to experience daily back pain. Plaintiff received pain medication until 2008, when he began to receive epidural injections.  Plaintiff arrived at the Mackinac County Jail on August 23, 2016, and told jail personnel that he was legally disabled and would need to see a doctor.  Plaintiff alleges that after a 56 day delay he finally saw Dr. Aldridge, who told Plaintiff that he needed medical

records from the Veteran's Administration. Plaintiff states that he only received 6 Tylenol pills per week for pain.

Plaintiff states that he did not receive any treatment for his back problems for approximately 5 months. In addition, Plaintiff slept on a steel bunk with a single mattress, despite his request for a second mattress. On January 31, 2017, a doctor read Plaintiff's medical records, did an examination, and said that Plaintiff had back and nerve issues. The doctor also said that if nothing was done, Plaintiff would be in bed for good. On February 1, 2017, Plaintiff received an extra mattress and was provided with 650 mg of Tylenol twice a day. On February 3, 2017, Plaintiff had additional blood work. Plaintiff was released on probation on March 23, 2017. Plaintiff alleges that he suffers with permanent injury as a result of Defendant Aldridge's failure to provide medical care.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416

(6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts that Dr. Aldridge failed to provide him with appropriate medical care and pain medication in violation of Plaintiff's Eighth Amendment rights.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

3

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

4

*Id.* at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

The day after Plaintiff arrived at the Mackinaw County Jail, a nurse performed an initial medical assessment. (ECF No. 26-2, PageID.155).  Plaintiff's medications were approved

5

by Dr. Dood. *Id*. Defendant Aldridge, co-signed the approval of Plaintiff's medications after reviewing the nurse's intake on September 6, 2017. (ECF No. 24-2, PageID.117). Plaintiff complained that his back pain medication, Neurontin, was causing him to have loose stools. *Id*. Dr. Fatoki discountinued the Neurontin by tapering Plaintiff off the medication. Plaintiff's family brought Lyrica to the jail to replace the Neurontin.

Dr. Dood examined Plaintiff on November 14, 2016. Dr. Dood prescribed prednisone for five days. On November 16, 2016, Dr. Dood discontinued prednisone, Lyrica, and gabapentin. (ECF No. 26-2, PageID.154). On December 11, 2016, Dr. Dood, gave a nurse a verbal order to prescribe Mobic to relieve Plaintiff's back pain. (ECF No. 26-2, PageID.156). Defendant Aldridge reviewed the chart and signed off on that order. *Id*.

Defendant assessed Plaintiff on December 13, 2016. At that time, Plaintiff was disrespectful, swearing, and aggressive. Plaintiff was unwilling to sign medical releases and refused medications. *Id*. On December 28, 2016, Defendant reviewed Plaintiff's medical records and submitted a request form for Bupropion HCL 150 mg to treat Plaintiff's symptoms of depression. (ECF No. 26-2, PageID.168).

After Plaintiff signed a release for Defendant to obtain medical records from the Veterans Administration, Defendant reviewed the records received on January 17, 2017. Defendant noted that Plaintiff had an ablation in the past indicating that he should not have nerve pain. Plaintiff had also received epidural injections. Dr. Aldridge documented his plan to have Plaintiff visit a specialist for evaluation and possible epidural steroid injection. (ECF No. 26-2, PageID.157). Dr. Aldridge ordered a follow-up examination in two weeks. *Id*.

On January 30, 2017, Dr. Fatoki sent Plaintiff to the emergency room for an "extensive workup." *Id*. Emergency room doctors found no emergent medical needs. Plaintiff received ibuprofen and was given a recommendation to follow-up with pain management. (ECF No. 26-2, PageID. 158-159). The next day, Plaintiff visited with Defendant for a physical examination. Plaintiff was in a wheelchair during the visit. Dr. Aldridge noted that he needed to see Plaintiff's medical records from Dr. Joseph Sullivan, M.D. and Michigan Spine and Pain. (ECF No. 26-2, PageID.165). Defendant ordered an MRI. Plaintiff's MRI revealed an old compression fracture that is stable when compared to his 2007 MRI impression, no acute fractures of subluxation, no evidence of compressive central or neural foraminal stenosis of the spine. Plaintiff had mild to moderate stenosis. (ECF No. 26-2, PageID.169-172).

Plaintiff has alleged that he suffers with a serious medical need. The medical records presented by Defendant show that Plaintiff had an old back injury and that he received epidural injections and pain medication. In the opinion of the undersigned, Plaintiff's medical records establishes that a question of fact exists regarding whether he had a serious medical need during his confinement in the Mackinaw County Jail.

However, the evidence fails to support his claim that Defendant acted with deliberate indifference to his medical needs. In the opinion of the undersigned, Dr. Aldridge's limited involvement with Plaintiff's medical care and treatment fails to show that he acted with deliberate indifference. Dr. Aldridge, addressed Plaintiff's complaints and prescribed pain medication. Dr. Aldridge obtained Plaintiff's outside medical records and ordered an MRI. Dr. Aldridge was not the only medical provider that saw Plaintiff while he was confined at the Mackinaw County Jail. Plaintiff has failed to establish that Dr. Aldridge refused to provide him

7

with appropriate medical care or ignored his complaints. The medical records establish that Dr. Aldridge took appropriate action during his contact with Plaintiff. At best, Plaintiff has presented a claim of negligence or a difference of opinion that fails to rise to the level of an Eighth Amendment claim.

Accordingly, it is recommended that Defendant's motion for summary judgment (ECF No. 24) be GRANTED, dismissing the remaining claim.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

 /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   June 12, 2018

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).